IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH DORTCH,

    Petitioner,

v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:14-cv-1066
JUDGE JAMES L. GRAHAM
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 1), the return of writ (Doc. 5), Petitioner's traverse (Doc. 10), and the associated exhibits. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this case be **DISMISSED**.

### I. Procedural History

On June 7, 2011, the Franklin County, Ohio grand jury indicted Petitioner on four felony counts: aggravated robbery, murder, aggravated murder, and receiving stolen property. All of the counts arose out of the shooting death of one Frank Turner on November 29, 2010. The State did not allege that Petitioner actually shot Mr. Turner, but that he aided and abetted another individual, Jamaal Massey, who did so.

Petitioner pleaded not guilty to the first three charges. Those counts were tried to a jury in January, 2012. Upon Petitioner's motion, the first two counts were

dismissed by the trial court, leaving the jury to consider only whether petitioner committed murder (the aggravated murder charge became a simple murder charge after the count charging Petitioner with a felony in connection with the murder was dismissed). The jury returned a guilty verdict on that count, including a firearm specification.

After the trial concluded, Petitioner pleaded guilty to the fourth count of the indictment, which was the receiving stolen property charge. In an entry filed on January 20, 2012, the trial court sentenced him to fifteen years to life on the murder charge; a consecutive term of three years on the firearm specification; and thirteen months, also in a consecutive term, on the receiving stolen property charge. *Return of Writ*, Ex. 7.

Through counsel, Petitioner timely appealed to the Tenth District Court of Appeals. He raised three assignments of error: (1) that the trial court's instructions on intent were erroneous; (2) that the trial court erred by not returning the jury for further deliberations after one of them expressed some confusion about the verdict when the jury was polled; and (3) that the convictions were against the manifest weight of the evidence and not supported by the evidence. *Return,* Ex. 11. In a decision rendered on December 28, 2012, the court of appeals overruled each of Petitioner's assignments of error and affirmed his convictions. *State v. Dortch*, 2012 WL 6738500 (Franklin Co. App. Dec. 28, 2012).

Still represented by counsel, Petitioner appealed to the Ohio Supreme Court. He presented two propositions of law in his appeal:

> First Proposition of Law
>
> Aiding and abetting a murder requires some evidence beyond presence that a defendant actually participated in the offense, and the jury is not permitted to stack inferences to determine the defendant's intent.
>
> Second Proposition of Law
>
> A trial court commits plain error if it does not instruct the jury that a defendant may only be convicted of aiding and abetting if the defendant participated in the offense by undertaking an affirmative act in furtherance of the crime.

*Return,* Ex. 16.  The Ohio Supreme Court declined review.  *State v. Dortch,* 135 Ohio St.3d 1434 (May 8, 2013).

On August 1, 2014, Petitioner filed his petition for a writ of habeas corpus with this court.  He asserts only one ground for relief, which he states as follows:

> The Franklin County, Ohio, Court of Appeals unreasonably and contrarily applied Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) when it ruled that Joseph Dortch's murder conviction was supported by sufficient evidence to permit a reasonable finder of fact to conclude that Dortch's guilt was proven beyond a reasonable doubt.

Respondent asserts that this claim is without merit.

## II. The Facts

The Court begins by reciting the facts as they were set out in the state court of appeals opinion.  That court said:

> In June 2011, appellant was indicted for counts of aggravated robbery, murder, and aggravated murder, each with a firearm specification. Appellant was also indicted for one count of receiving stolen property.

-3-

The aggravated robbery, murder, and aggravated murder charges arose from the November 29, 2011 killing of Frank Turner. The matter proceeded to a jury trial on those counts while appellant pleaded guilty to the count of receiving stolen property. Appellant was tried jointly with Jamaal Massey. Plaintiff-appellee, the state of Ohio, prosecuted Massey as the principal offender and prosecuted appellant under a theory of complicity by aiding and abetting. At trial, the following evidence was presented.

The jury heard testimony from Turner's fiancée, Jennifer Hairston. Hairston shared two children with Turner. According to Hairston, Turner operated a "candy store" out of their apartment at 731 Canonby Place where he sold candy, snacks, soda, and drugs such as marijuana and crack cocaine. (Tr. 322.) However, due to the volume of customers that began coming to the apartment throughout the day and night, Turner decided to move the candy store to 713 Canonby Place, the front of which could be seen from the front of 731 Canonby Place.

Hairston knew appellant since appellant was born and considered him to be a younger member of her family. She had known Massey for one and one-half years before the shooting after being introduced to him by Turner, and she considered him to be a friend of the family. Hairston testified that she drove with Turner and appellant to purchase marijuana to sell at the candy store. According to Hairston, Turner returned from the purchase with two "bricks" of marijuana. (Tr. 328.) Later that afternoon, the three shared lunch, talked, and laughed with each other.

Hairston testified that Turner hosted a barbeque that evening at 713 Canonby Place. At one point during the barbeque, Hairston observed an incident where Massey appeared with a group of individuals to make a purchase from the candy store. According to Hairston, Turner refused to sell to Massey or the group and turned them away. Later that evening, Turner walked Hairston back to her apartment before returning to the candy store. Hairston testified that, upon leaving Turner's apartment, she observed "a group of boys across the street," one of whom was Massey. (Tr. 339.)

Hairston was preparing her children for bed when suddenly she heard "a loud boom" outside. (Tr. 341.) Hairston left her apartment and approached the street to see Turner in an apparent confrontation involving Massey, a man named Michael Ford, and appellant. Hairston first saw Turner punch appellant into the bushes by Turner's front door, which confused Hairston given her and Turner's close relationship with appellant. Hairston then ran toward the confrontation and saw Turner begin "tussling" with Massey in the doorway. (Tr. 348.) Throughout the struggle, Hairston saw Turner holding Massey's hand. Hairston testified that she stood on the sidewalk in front of the apartment screaming Turner's name before Turner eventually let go of Massey's hand, which was holding a gun. Hairston then saw Massey fire a shot causing Turner to fall backward. Hairston testified that Massey continued firing at Turner as Massey began moving away from Turner's apartment. Hairston grabbed Turner in the hallway of Turner's apartment and called 911. According to Hairston, she looked up to see appellant and Massey running in the same direction to the Southpark Apartment Complex.

The state also presented the testimony of Rodney Gates, who testified that he observed the confrontation and shooting. Gates, who was at the apartment complex visiting his daughter that day, had known both Turner and appellant and had met Massey earlier that day. Later that evening, Gates saw appellant and Massey in front of Turner's apartment, appellant by the front door and Massey by the corner. According to Gates, Turner invited appellant inside the apartment and, shortly thereafter, Massey came from around the corner and entered through Turner's front door. Gates then saw Massey and Turner by the front door struggling for a gun held by Massey. Gates testified that the struggle ended with the sound of a gunshot, which caused Turner to fall. Gates saw Massey fire between four and five additional shots at Turner. Gates testified that Massey and appellant ran from the scene together to a nearby apartment building.

The jury heard testimony from Tyara Summerall, who was romantically involved with Massey at the time of the shooting. Summerall saw appellant shortly after the shooting. Specifically, Summerall stated that appellant appeared at her front porch talking on his cell phone when she overheard appellant say that Turner had been shot. Summerall testified

that appellant changed his clothing by removing "a hoodie and maybe a pair of pants or some shorts." (Tr. 94.)

Jesse Hemphill testified that he was with Turner immediately before the shooting. Hemphill testified that, after the barbeque, he and Turner were playing cards in the front room of Turner's apartment when Turner got up from the table to answer the door. Hemphill stated that, after Turner opened the door, he was pushed back; however, Hemphill could not see by whom due to a small wall between the front room and the front door. Hemphill then heard multiple gunshots before seeing Turner fall into the kitchen. (Tr. 277.)

Columbus Police Detective Zane Kirby examined a cell phone found at the murder scene, and he testified that the phone contained photographs of an African–American woman. Summerall confirmed at trial that the pictures were of her. She also said that the cell phone belonged to appellant. Lastly, the parties stipulated that Franklin County Deputy Coroner Dr. An would testify that Turner died from a bullet that punctured his lung.

At the close of the evidence, appellant moved for an acquittal pursuant to Crim.R. 29(A). The court granted the motion on the aggravated robbery count and, because of that decision, dismissed the count of aggravated robbery and reduced the aggravated murder charge to a charge of murder. The court denied appellant's motion as it pertained to the reduced murder count, and the jury found appellant guilty of murder with a firearm specification.

*State v. Dortch, supra*, at *1-3.

### III.  Legal Standard

### A.  The AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson,* 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).

AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24,(2002) (per curiam).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ---

U.S. ----, ----, 132 S.Ct. 26, 27 (2011), quoting *Harrington v. Richter*, 5 62 U.S. ----, ----, 131 S.Ct. 770, 786–8 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### B. Sufficiency of the Evidence

Petitioner claims that the evidence is constitutionally insufficient to sustain his conviction. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir.2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.1990) (en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of

> fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir.2006); *United States v. Somerset*, 2007 WL 3005746 (S.D.Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra*.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the AEDPA, two levels of deference to state decisions are required:

> "In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir.2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury-not the court-to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ----, ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ----, ----, 132 S.Ct. 2060, 2062 (2012) (per curiam ).

### IV. Discussion

The Court begins with a close analysis of the Tenth District Court of Appeals' decision (which was a 2-1 decision, including a dissent from Judge Gary Tyack on the question of the sufficiency of the evidence).

The majority opinion first recognized that Petitioner was guilty, if at all, only on an aiding and abetting theory. Aiding and abetting is one way in which someone can be complicit in the commission of a criminal offense. Complicity is defined in Ohio Rev. Code §2923.03(A) in this way:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

The court of appeals, citing to *State v. Johnson*, 93 Ohio St.3d 240 (2001), noted that "[t]he mere presence of an accused at the crime scene is not, by itself, sufficient to prove that the accused was an aider and abettor under R.C. 2923.03(A)(2)." *State v. Dortch*, *supra*, at *7. It then explained why the evidence supported the jury's finding that Petitioner was not just present when Frank Turner was shot, but that he aided or abetted Jamaal Massey and was therefore guilty of murder.

The court of appeals focused on two aspects of Petitioner's actions: those which occurred before the shooting, and those which occurred afterward. According to that court, the record demonstrated that, prior to the shooting,

1.  "Multiple witnesses observed appellant with Massey before [and] during ... the shooting."

2.  "[Witnesses Rodney] Gates and [Jennifer] Hairston observed appellant involved in the initial altercation that led to the shooting."

3.  "Gates saw appellant and Massey approach Turner's apartment together and testified that Turner invited appellant inside while Massey was positioned around the corner."

4.  "[T]he struggle began only after Massey followed appellant into the apartment."

-11-

> 5. "Hairston described running to Turner's apartment and seeing Turner fighting both appellant and Massey."

*State v. Dortch, supra.*

After the shooting,

> 1. "[Petitioner] did not flee from the scene until after Massey had fired multiple shots at Turner."
>
> 2. "[A]fter the final shot was fired, appellant chose to flee from the scene with Massey."
>
> 3. "[I]mmediately after the shooting, [witness Tyara Summerall] observed appellant discussing the shooting on his cell phone and saw him change his clothing."

*Id.*

Based on this construction of the record, the court of appeals concluded there was enough evidence for the jury to find, beyond a reasonable doubt, that Petitioner had the same criminal intent as Massey. Dissenting Judge Tyack, reading the record differently, concluded that

> Dortch was merely present. He did not, in any way, help Massey shoot Turner. Turner and Massey struggled over the gun after Dortch was knocked into the bushes. Massey got free of Turner's grip and shot Turner. Dortch did not participate. In plain English, Dortch did not, in any way, help (aid or abet) Massey shoot Turner. Dortch did not ask Massey to shoot Turner (solicit the crime). Dortch was merely present.

*Id.* at *9.

The court of appeals did not cite to *Jackson*, *In re Winship*, or any other case which construes the Due Process Clause in terms of sufficiency of the evidence to convict. On

the other hand, it applied the rule in those cases to the evidence, determining whether a jury could have found the elements of complicity beyond a reasonable doubt. The question here is not, therefore, whether the state court's decision is contrary to clearly-established law, but whether it represents an unreasonable application of the principles set forth in *Jackson* and similar decisions.

Petitioner, agreeing with Judge Tyack's analysis, argues that the state court unreasonably applied these principles because he was "merely present" at the scene of the crime. *See Traverse*, Doc. 10, at 12. He asserts that the evidence of his proximity to the crime, and his flight afterward, were insufficient as a matter of law to support a conviction. In particular, he takes issue with the state court's finding that he was with Massey before the shooting or that he was involved in the initial altercation which led to the shooting. He asserts that no witness placed him and Massey together prior to the shooting and that his involvement in the altercation was limited to being a victim of Frank Turner's punch, which preceded Turner's struggle with Massey and which knocked Petitioner into the bushes. Petitioner does not dispute that he fled the scene immediately after the shooting, but points out that many other witnesses did the same. Further, he disagrees with the state court's conclusion that he fled *with* Massey, instead arguing that although he and Massey ran to the same apartment building, each went to a different apartment, and those apartments were at opposite ends of the building. He also agrees that the record showed that he changed clothes immediately after arriving at his girlfriend's apartment, but suggests that there is nothing inherently unlawful about having done so. Lastly, he contends that the only way for the jury to have gotten to a

guilty verdict was through stacking inferences, something not permitted under Ohio law. Conceding that the jury could have concluded that he and Massey were together at the time of the shooting, based upon the fact that in a short period of time Turner, the victim, struggled first with Petitioner and then with Massey, he claims that the next inference - that because they were together, they were acting in concert - and a subsequent inference - that because they acted in concert, Petitioner did something intended to cause Turner's death - should not have been allowed.

There is support in the case law for some of Petitioner's arguments. For example, in *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), the Court of Appeals, applying the AEDPA's deferential standard of review, still concluded that the evidence was insufficient to convict a defendant of aiding and abetting a carjacking even though the perpetrator and the defendant fled the scene at the same time. *Brown*, citing *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981), noted that even fleeing a crime scene with the perpetrator - exactly what happened here - might support "reasonable speculation" that the two were acting together, but was not proof beyond a reasonable doubt. *Brown v. Palmer*, 441 F.3d at 352; *see also Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2004)("No reasonable trier of fact could find evidence of criminal culpability in the decision ... to run home from the scene of a shooting, regardless of whether the home was in the same general direction as the car of a fleeing suspect"). *Brown* also cited *Hopson v. Foltz,* 1987 WL 37432 (6th Cir. May 20, 1987), as an example of how *Jackson's* principles are applied in a murder case; there, the Court of Appeals overturned the state conviction of a defendant who "had been convicted of aiding and abetting first degree murder based

on evidence that he and the victim had argued shortly before the victim was killed, that he was present when the victim was killed, and that he may have known that the perpetrator intended to harm the victim." The Court of Appeals said that the animus which the defendant may have had toward the victim did not prove beyond a reasonable doubt that he took any action to assist the actual shooter. *Brown, supra.* Finally, that court held that although "[t]he above cases are admittedly pre-AEDPA ... their holdings that distinguish reasonable speculation from sufficient evidence are still persuasive in establishing that the state court's application of federal constitutional law as set forth in *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, was objectively unreasonable." *Id.*

The evidence in this case of a simultaneous, but perhaps not concerted, flight, however, does not stand alone. Rodney Gates did testify, as the state court of appeals described, that he had seen Petitioner and Massey together on the day of the shooting, and that when Petitioner approached Turner's home, Massey was standing at the corner of the house. According to Gates, when Turner opened the door for Petitioner and let him in the house, Massey came up, struggled with Turner, and then shot him. That was when both Massey and Petitioner ran away from the scene. Jennifer Hairston, also an eyewitness, said she saw three men near the scene before the shooting - Petitioner, Massey, and a man named Michael Ford. She observed the fight between Petitioner and Turner, and immediately after Turner punched Petitioner, the fight with Massey began that ended in the shooting. She also saw Petitioner and Massey leave the scene at the same time, in the same direction.

This is, admittedly, thin evidence upon which to rest a murder conviction. But unlike the defendant and the carjacker in *Brown*, Petitioner and Massey knew each other and were together earlier in the day. That fact helps to distinguish that case. And the fact that Petitioner and Massey ran to different doors of the apartment building they fled to does not change the fact that they left the scene of the shooting together, running in the same direction. Jennifer Hairston's testimony that she saw three men near the door where first Petitioner, and then Massey, attacked the victim is suggestive of a concerted plan. And some weight must be given to the fact that Petitioner immediately changed his clothes after the shooting. He may have been concerned that someone would identify him, mistakenly, as being involved, but it could also be inferred that he was attempting to avoid being identified because he was involved.

All of this evidence is circumstantial, but the jury was entitled to believe it all and to draw reasonable inferences from it. That includes the primary inference not just that Massey and Petitioner were together, but that they had a common plan to attack Turner, and that Petitioner's action in going to the door first, while Massey waited behind, and then getting into a confrontation with Turner which led to Turner's throwing the punch, was part of the plan.

Was this enough evidence to support a conviction for aiding and abetting a murder? Perhaps; perhaps not. But given the fact that this Court does not perform the initial review of that question, but must also defer to the state court of appeals' decision, the uncertainty about the answer illustrates that reasonable jurists could differ on the outcome. So, first deferring to the jury - which was told that it could convict Petitioner

only if there was evidence which proved, beyond a reasonable doubt, Petitioner's intent to aid and abet Massey - and, second, deferring to the state court of appeals, which applied the correct law and constructed a reasonable argument in support of its decision - this Court cannot now reach a sufficiently different conclusion to support the grant of a writ of habeas corpus.  As the Court of Appeals observed in *Tapke v. Brunsman*, 565 Fed.Appx. 430, 436-37 (6th Cir. May 1, 2014),

> The appropriate inquiry under AEDPA is "not whether a federal court believes a state court's determination ... was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009). Tapke has not cleared this threshold: the Ohio Court of Appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87.

Here, too, the court of appeals' decision leaves room for fairminded disagreement on the question of whether the evidence was sufficient to convict.  For that reason, it is recommended that the petition be denied.

## V.  Recommendation

For all of the reasons stated above, it is recommended that the petition for a writ of habeas corpus be **DENIED** and this action be **DISMISSED.**

## VI.  Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge