IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH DORTCH,

    Petitioner,

    v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:14-CV-1066
JUDGE JAMES L. GRAHAM
MAGISTRATE JUDGE KEMP

## OPINION AND ORDER

On November 10, 2015, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed. (ECF No. 11.) Petitioner has filed an *Objection* to the Magistrate Judge's *Report and Recommendation*. (ECF No. 14.) Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's *Objection* (ECF No. 14) is **OVERRULED**. The *Report and Recommendation* (ECF No. 11) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

This case involves Petitioner's conviction after a jury trial in the Franklin County Court of Common Pleas on one count of murder, with a firearm specification. The case involves the murder of one Frank Turner, who was shot and killed by co-defendant Jamaal Massey on November 29, 2011. Petitioner was charged and convicted as an aider and abettor. As his sole claim for relief, Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction. The Magistrate Judge recommended dismissal of this claim on the merits.

Petitioner objects to the Magistrate Judge's recommendation. Petitioner argues that reasonable jurists would not disagree that the evidence is constitutionally insufficient to sustain

his conviction.  In this respect, Petitioner asserts that the evidence fails to reflect he had criminal intent, assisted Massey in commission of the crime, or had a motive to kill Turner.  Petitioner complains that the trial court permitted cross-examination of Jennifer Hairston on her prior statement without instructing the jury that such evidence could only be considered for impeachment purposes.  Petitioner argues that the state appellate court incorrectly found that he had been involved in an altercation with Turner.  He maintains that the evidence solely reflects that he fell into a bush after being punched by Turner.  In short, Petitioner asserts that the evidence establishes only his presence at the scene and flight thereafter, which facts do not meet the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).   Petitioner argues that his conviction can only be supported by the improper stacking of inferences and speculation.

The sole issue before the Court is whether the state appellate court unreasonably concluded that the evidence was constitutionally sufficient to sustain Petitioner's conviction under the standard of review provided for in 28 U.S.C. § 2254(d)(1), (2).  In making such determination, this Court need not address Petitioner's claim that the trial court should have instructed the jury that cross examination of a prosecution witness could only be considered for impeachment purposes, or that the jury therefore improperly considered such evidence in reaching its verdict.[1]  Further, this Court is not persuaded that Petitioner has met his burden of rebutting the presumption of correctness afforded the state appellate court's factual finding that he was involved in an altercation with the victim.  28 U.S.C. § 2254(e)(1).

Rodney Gates watched Turner open the door to let Petitioner into the house while co-defendant Massey stood at the corner. (ECF No. 5-2, PageID# 313.)  Jesse Hemphill, who was playing cards with Turner when Turner got up to open the door, saw Turner pushed back,

---

[1] Jennifer Hairston testified that she did not hear Petitioner say anything during at the time of the shooting.  (ECF No. 5-3, PageID# 537 551.)  On cross examination, she could not recall her prior statement indicating that she heard Petitioner yell, "you know what it is" at the time of the shooting.  (See ECF No. 5-3, Page ID# 561-62)

2

although he could not see by whom.  (ECF No. 5-3, PageID# 472.)[2]  A minute or two later, Massey approached, began to struggle with Turner, and Turner was shot.  (PageID# 317.)

> Mar goes to go in the door and that's when you see a struggle right here at the front of the door right here.  First bullet go off and you see Frank fall down here and as he comes out the door all you hear is shots as he's coming out the door.  They come out the door and before long you see Joe come out the door.

*Id*.  Mar, or Massey, fired four or five more times as he exited.  (PageID# 318.)  Gates did not observe Turner struggle with Petitioner.  (PageID# 330.)  However, Jennifer Hairston saw Turner hit Petitioner, who fell backwards by a bush.  (ECF No. 5-3, PageID# 536.)  From these facts, the state appellate court did not unreasonably determine that Petitioner had been involved in the altercation just prior to the shooting.

Petitioner argues that, because there was no direct evidence indicating that Petitioner and Massey were together during the time leading to the shooting, the jury would have to make such an inference, and then also infer that Petitioner and Massey acted together to with intent to cause Turner's death.  Under these circumstances, Petitioner argues, his conviction is based on mere speculation.

The state appellate court rejected these arguments in relevant part as follows:

> [T]he evidence adduced at trial established more than appellant's "mere presence" at the time Massey shot Turner. Multiple witnesses observed appellant with Massey before, during, and after the shooting. Gates and Hairston observed appellant involved in the initial altercation that led to the shooting. Gates saw appellant and Massey approach Turner's apartment together and testified that Turner invited appellant inside while Massey was positioned around the corner. According to Gates, the struggle began only after Massey followed appellant into the apartment. Further,

---

[2] Hemphill testified:  Somebody knocked on the door and Frank got up and answered the door and he opened the door and he look like he got pushed back.  He stepped back a couple steps.  I heard some shots and I heard him kick the door closed and he fell into the kitchen.  (ECF No. 5-3, PageID# 472.)  [T]he part I saw was seen Frank throw a blow like he was coming back like he had been pushed or something.  Then I heard a few shots and then he kicked the door and fell in the kitchen.  (PageID# 473.)

3

> Hairston described running to Turner's apartment and seeing Turner fighting both appellant and Massey. The jury was free to conclude that appellant, who shared a close relationship with Turner and Hairston, exploited his relationship with Turner to gain entry into Turner's house.
>
> Appellant's participation and shared intent was established by appellant's actions before the shooting and by the fact that appellant did not flee from the scene until after Massey had fired multiple shots at Turner. See State v. Whitfield, 2d Dist. No. 22432, 2009–Ohio–293, ¶ 26 (jury could infer defendant's purpose to kill under a complicity theory where the "[d]efendant did not flee from the store until after Pendergrass had fired multiple shots."). Even after the final shot was fired, appellant chose to flee from the scene with Massey, which further "negate[d] his claimed lack of culpability and, instead, demonstrate[d] furtive conduct reflective of a consciousness of guilt." State v. Mitchell, 10th Dist. No. 10AP–756, 2011–Ohio–3818, ¶ 29. The jury heard further circumstantial evidence of appellant's guilt from Summerall, who, immediately after the shooting, observed appellant discussing the shooting on his cell phone and saw him change his clothing. See State v. Washington, 10th Dist. No. 09AP–424, 2009–Ohio–6665, ¶ 30 ("And, appellant's fleeing the scene and taking off clothing after the shooting negates appellant's claimed lack of culpability and, instead, evinces furtive conduct reflective of a consciousness of guilt."). Courts have also found evidence of participation and intent where, as here, the defendant does not report the shooting to police. State v. Fields, 102 Ohio App.3d 284, 288 (12th Dist.1995).

*State v. Dortch*, No. 12-AP-125, 2012 WL 6738500, at *7 (Ohio App. 10th Dist. Dec. 28, 2012).

In reviewing Petitioner's claim, this Court must first determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; even if this Court concludes that it could not, the Court must defer to the decision of the state appellate court, so long as it is not unreasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> [A] federal habeas court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

4

*Coleman v. Johnson*, 566 U.S. --, --, 132 S.Ct. 2060, 2062 (2012)(*per curiam*)(citations omitted).

Petitioner and Massey were seen together immediately prior to the shooting, and arrived at the same time at Turner's home. Turner opened the door for Petitioner while Massey waited around the corner of the house, outside of the victim's view. A witness from inside the house saw Turner being pushed back. Then, although there was evidence that Petitioner and Turner were friends, Turner punched Petitioner shortly after opening the door, knocking him into the bushes. From these facts, the jury could reasonably infer that both Petitioner and Massey had threatened Turner. After the shooting, Petitioner and Massey fled together to a nearby apartment complex. From the evidence presented at trial, the jury could reasonably infer that Petitioner knowingly and intentionally facilitated Massey's shooting of the victim, intending to cause Turner's death.

Under the highly deferential standard of review mandated in these proceedings, the Court concludes that the decision of the state court of appeals leaves room for fair-minded disagreement on Petitioner's claim of insufficiency of the evidence. Under these circumstances, this Court concludes that Petitioner has failed to establish that he is entitled to relief.

Therefore, Petitioner's *Objection* (ECF No. 14) is **OVERRULED**. The *Report and Recommendation* (ECF No. 11) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

Date: January 21, 2016

                                                _____s/James L. Graham_____
                                                JAMES L. GRAHAM
                                                United States District Judge